<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

ANDRE' LEWIS,              :

                            :  Civil Action No. 07-3663 (JAP)

          Plaintiff,    :

                            :

          v.             :   **OPINION**

                            :

LAZARUS VITON, et al.,    :

                            :

          Defendants.   :

**APPEARANCES:**

     ANDRE' LEWIS, Plaintiff <u>pro se</u>
     # 408198/#5
     Northern State Prison
     168 Frontage Road, P.O. Box 2300
     Newark, New Jersey 07114-2300

**PISANO**, District Judge

    Plaintiff Andre' Lewis ("Lewis"), currently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be allowed to proceed in part.[1]

## I.   BACKGROUND

Lewis brings this civil rights action against the following defendants: Lazarus Viton, Giuseppe Mandara, James Liik, Sr., P. Lampitt, D'Amore, and A. Degner, all correctional officers ("CO") at the New Jersey State Prison ("NJSP"); Sgt. Steve Alaimo, in charge of the Administrative Segregation Unit at NJSP at the time of the events at issue in the Complaint; Ronald Cathal, Administrator at NJSP at the time; Jack Osvart, a hearing officer at NJSP; Pamela Trent, assistant Administrator at NJSP; and Devon Brown, Commissioner of the New Jersey Department of Corrections ("NJDOC").  The following factual allegations by plaintiff are taken from the Complaint and are accepted for purposes of this

---

[1]  The Clerk's Office received the Complaint and IFP application on August 6, 2007; however, the Complaint is dated August 1, 2007.  Giving Lewis the benefit of all inferences related to the date he filed his complaint, the Court finds that Lewis did "file" his complaint on the date he handed it to prison officials to be mailed to the Court for filing, on or about August 1, 2007.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas petitions submitted by inmates confined in an institution).

screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff alleges that, on August 7, 2005, defendant correctional officers and Sgt. Alaimo, verbally harassed, threatened to kill, and brutally assaulted plaintiff while he was being transported to the medical unit for his insulin shot. Lewis states that he had been handcuffed behind his back and had done nothing and said nothing to provoke the assault by defendants.[2]  Lewis' injuries were so severe that he lost consciousness and was taken to an outside hospital by ambulance for treatment.

Lewis also alleges that defendants fabricated charges against him so as to cover up their assault of plaintiff.  Lewis claims that he heard defendants Viton and Mandara tell other officers that plaintiff kicked Degnan.  Sgt. Alaimo allegedly coerced defendant Liik to say that plaintiff bit Liik, although

---

[2]  Lewis relates that the officers kicked, punched, choked, strangled, and hit him repeatedly after he was slammed to the hard concrete floor.  He also alleges that defendants repeatedly slammed his head to the concrete floor, while plaintiff was defenseless, handcuffed, and pinned to the ground.  With regard to the verbal threats and harassment, Lewis alleges that defendants Viton, Mandara, Degner and Alaimo verbally threatened plaintiff's life and safety, and called him a "nigger" repeatedly.  Specifically, Lewis alleges that these defendants threatened to "kill" him in retaliation for plaintiff's complaint against them as the result of an earlier assault in March 2005. The March 2005 incident is the subject of another civil action currently pending in this district court, Lewis v. Williams, et al., Civil No. 07-1592 (GEB).

Liik had said that he must have scraped his hand against plaintiff's teeth while punching him.  Sgt. Alaimo also attempted to prevent the nurse at the prison infirmary from calling an ambulance.

On August 19, 2005, twelve days after the incident, Lewis was placed in a condemned "dry cell" which allegedly was "strewn with human and rodent excrement, blood, urine, and debris." (Complaint at ¶ 96).  A disciplinary proceeding was conducted soon afterwards.

Lewis alleges that defendant Osvart, the hearing officer, did not conduct a full hearing and did not accord plaintiff with all of his due process rights.  Lewis states that Osvart "shut down" plaintiff's "substitute counsel" and told him that it would be a quick hearing.  Plaintiff further states that he overheard Osvart tell his counsel that the assault charges against plaintiff were "too outrageous" and "fabricated bullshit." (Complaint, ¶¶ 101-102).  Osvart told plaintiff that he saw the video tape of the incident and it was clear that plaintiff was not guilty of the infractions levied against him.  Lewis also alleges that Osvart told him that he had found Lewis guilty of false charges in the past so as to appease the correctional officers who had charged him.  Osvart allegedly told plaintiff that he would save the video tape and strongly recommend that plaintiff be transferred to another prison facility.  Osvart told

4

plaintiff that "he knew how to handle this matter in a way that would be satisfactory to both sides."  (Compl., ¶¶ 103-106).

In the adjudication report delivered to Lewis a short time later, Osvart found Lewis guilty of threatening another, conduct that disrupts, and throwing bodily fluid.  There was no finding of guilt on the four false assault charges filed against plaintiff.  Lewis contends that this adjudication contained no "substantial evidence" to support Osvart's findings.  (Compl., ¶¶ 107-110).  Lewis immediately appealed this decision to the prison administrator, Ronald Cathel, who had been repeatedly notified of the threats against plaintiff after his first beating in March 2005, the subject of Lewis' earlier pending action in Civil No. 07-1592 (GEB).  On August 29, 2005, defendant Pamela Trent denied plaintiff's appeal.  (Compl., ¶¶ 111-112).

Lewis alleges that he and his family have repeatedly contacted defendant Commissioner Brown to complain about the assaults inflicted upon plaintiff in March and August 2005. Lewis states that Brown did nothing to stop these abuses or to protect plaintiff from harm committed by defendant correctional officers who had a history of such violence and abuse.  (Compl., ¶ 113).

Lewis further alleges that from August 2005 through the present time, he has made numerous attempts to communicate with administrative officials at NJSP in an effort to exhaust his

administrative remedies.  He has not received any satisfactory response.  (Compl., ¶ 114).

Lewis asserts claims of excessive force in violation of the Eighth Amendment and common law tort claims of assault and battery against defendants, Viton, Mandara, Degner, Liik, D'Amore, Lampitt, Alaimo and Carbonaro.  He also asserts that these defendants conspired to fabricate false disciplinary reports against plaintiff to cover up their unprovoked assault on plaintiff.  Next, Lewis asserts an Eighth Amendment failure to protect claim with respect to defendant Cathel and Brown for their failure to take disciplinary or other actions to curb the known pattern of physical and psychological abuse inflicted by these named correctional officer.  Lewis also alleges that defendant Osvart violated his right to due process with respect to the disciplinary proceedings by finding plaintiff guilty of certain charges without substantial evidence to support the disciplinary finding.  Finally, Lewis alleges that defendants Cathel and Trent violated his right to due process by refusing to reverse plaintiff's disciplinary conviction.  (Compl., ¶¶ 115-122).

Lewis seeks declaratory judgment against defendants that they violated plaintiff's constitutional rights.  He also seeks compensatory and punitive damages from defendants, jointly and severally, in an amount exceeding $250,000.00.  He further seeks

injunctive relief, decreeing that all defendants be terminated from their employment with the NJDOC and barred from any employment with law enforcement agencies.  (Compl., "Relief Requested").

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,

8

108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

It would appear that all of the named defendants are state actors because they are employed as correctional officials at the New Jersey State Prison and with the Department of Corrections

9

("DOC").  Therefore, it appearing that all defendants may be persons acting under color of state law in this instance, the Court will review the claims asserted in the Complaint to determine whether plaintiff has sufficiently alleged a cognizable claim(s) upon which relief may be granted.  See 28 U.S.C. §§ 1915(e)(2) and 1915A.

IV.  <u>ANALYSIS</u>

A.  <u>Excessive Force Claim</u>

Plaintiff's claim against the named correctional officers, Viton, Mandara, Carbonaro, Liik, Lampitt, Alaimo, D'Amore, and Degner may be construed as an excessive force claim in violation of the Eighth Amendment because he is a convicted prisoner.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  <u>Id.</u> at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving

10

standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

11

purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.

"When prison officials maliciously and sadistically use force to

cause harm, contemporary standards of decency always are

violated."  Id. at 9.  In such cases, a prisoner may prevail on

an Eighth Amendment claim even in the absence of a serious

injury, the objective component, so long as there is some pain or

injury and something more than de minimis force is used.  Id. at

9-10 (finding that blows which caused bruises, swelling, loosened

teeth, and a cracked dental plate were not de minimis for Eighth

Amendment purposes).

     To determine whether force was used in "good faith" or

"maliciously and sadistically," courts have identified several

factors, including:

>     (1) "the need of the application of force"; (2) "the
>     relationship between the need and the amount of force
>     that was used"; (3) "the extent of injury inflicted";
>     (4) "the extent of the threat to the safety of staff
>     and inmates, as reasonably perceived by responsible
>     officials on the basis of the facts known to them"; and
>     (5) "any efforts made to temper the severity of a
>     forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force

is "excessive" and will give rise to the level of a

constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear

that not "every malevolent touch by a prison guard gives rise to

a federal cause of action").  Therefore, "[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."
Id. at 9-10.

      Here, Lewis alleges that defendants brutally assaulted him
without provocation by kicking, punching, and stomping on him
while plaintiff was restrained by handcuffs, and by the officers
holding his legs.  Lewis also claims that these officers acted
maliciously because plaintiff had complained about an earlier
incident involving one or more of the same officers.  Further,
Lewis asserts that he sustained serious injuries that required
his transport to an outside hospital for medical treatment, thus
suggesting that his injuries were not de minimis.[3]  Therefore,
based on the allegations in the Complaint, if true, it would
appear that Lewis has asserted facts sufficient to suggest that
defendants exhibited malicious and sadistic conduct intended to
cause plaintiff pain.  Such conduct, if true, is "repugnant to
the conscience of mankind" absent extraordinary circumstances
necessary to justify that kind of force.  Hudson, 503 U.S. at 10.

---

[3]  "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;
not by the resulting injuries."  Smith v. Mensinger, 293 F.3d
641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing
an excessive force claim is whether the force was applied
maliciously and sadistically to cause harm.  Id. at 649; Brooks,
204 F.3d at 106.  Otherwise, an inmate "could constitutionally be
attacked for the sole purpose of causing pain as long as the
blows were inflicted in a manner that resulted" in injuries that
were de minimis.  Id.

Accordingly, this Court will allow this claim to proceed past the screening stage.

Furthermore, to the extent that Lewis also is asserting a common law tort claim of assault and battery against these individual correctional officers, the Court finds that supplemental jurisdiction may be exercised under 28 U.S.C. § 1367(a) because such claim is plainly related to plaintiff's Eighth Amendment excessive force claim, over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

B.   Failure to Protect or Supervise Claim

Next, Lewis alleges that defendant Cathel, Administrator at NJSP at the time, and Commissioner Brown of the NJDOC, failed to take disciplinary or other preventive actions to curb the "well-known pattern" of physical abuse by the defendant correctional officers named above, in violation of the Eighth Amendment.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

14

As discussed above, to successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due

care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  <u>Farmer</u>, 511 U.S. at 834.

Here, Lewis alleges generally that defendants Cathel and Brown did nothing to prevent further abuses and assaults by the defendant correctional officers despite knowledge of the March 2005 attack against plaintiff, and plaintiff and his family's repeated notices to Cathel and Brown about the need to protect Lewis from harm.  This allegation may be sufficient, at this early screening stage, to withstand dismissal because it tends to show that defendants Cathel and Brown were informed or should have known that there was a substantial risk of harm to plaintiff from these corrections officers.  <u>See</u> <u>Nami</u>, 82 F.3d at 67-68; <u>Farmer</u>, 511 U.S. at 842; <u>accord</u> <u>Hamilton v. Leavy</u>, 117 F.3d 742, 747-48 (3d Cir. 1997); <u>Ingalls v. Florio</u>, 968 F.Supp. 193, 199-200 (D.N.J. 1997).  Accordingly, the Court will allow this failure to protect claim proceed against defendant Cathel and Brown at this time.

C.  <u>Denial of Disciplinary Due Process Claim</u>

Next, Lewis alleges that defendant Osvart denied plaintiff his right to procedural due process during prison disciplinary proceedings.  Namely, Lewis states that Osvart adjudicated plaintiff's guilt on some of the charges without substantial evidence to support Osvart's findings.  Lewis also alleges a general due process violation against defendants Cathel and Trent

for upholding the disciplinary findings without substantial evidence.

To support this denial of procedural due process claim, Lewis must demonstrate that the procedures afforded him fell short of the requirements enunciated in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).[4]  <u>Jackson v. Johnson</u>, 15 F. Supp.2d 341, 351 (S.D.N.Y. 1998).  <u>See</u> <u>Sandin</u>, 515 U.S. at 487.

In <u>Wolff v. McDonnell</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  <u>Wolff</u>, 418 U.S. at 563-71.  However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  <u>Id</u>. at 567-68.

---

[4]  In <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).

17

See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young
v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891
F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F.
Supp. 850, 854-55 (D. Nev. 1985).

Lewis does not contend that he did not receive timely notice
of the disciplinary action.  Rather, he argues that he had a
truncated hearing and was not given an opportunity to present
evidence or witnesses at the hearing.  He also claims that there
was no evidential support for the hearing officer's determination
of guilt, but does admit that he was provided with a written
report from the disciplinary hearing officer ("DHO") as to the
disciplinary findings in this matter.

*Opportunity to Present Evidence*  Based on the facts as
alleged by Lewis in his Complaint, plaintiff has not demonstrated
a claim of constitutional magnitude.  First, while Lewis states
that Osvart was not entertaining "anything" from plaintiff at the
hearing, Lewis confirms that Osvart looked at the video tape of
the incident and determined that Lewis was not guilty of assault
as charged.  Second, Lewis does not allege that he had other
witnesses or evidence to present at the hearing.  In fact, he
maintains that the video tape was important and should be
preserved for his defense.  Thus, the critical evidence needed to
support plaintiff's case was reviewed by DHO Osvart at the
disciplinary proceeding, and DHO Osvart told plaintiff that he

18

relied on the video tape in reaching the decision to drop the assault charges against plaintiff.  Therefore, because Lewis has not shown that he had other evidence or witnesses to produce at the hearing and the DHO had significant evidence which exonerated plaintiff from the assault charges, there is no apparent denial of due process under <u>Wolff</u>, and this claim will be dismissed for failure to state a cognizable claim of a federal constitutional deprivation.

*Written Decision with Evidentiary Support*  Next, Lewis claims that there was no evidentiary support for the DHO's decision.  He does admit, however, that he was provided with a written decision as required under <u>Wolff</u>.  Moreover, Lewis acknowledges that the disciplinary findings by DHO Osvart refers to "evidence" that DHO Osvart relied upon in reaching his determination.  Specifically, Lewis relates that the DHO found that there is "no reason to discredit the officers" on the other charges on which plaintiff was found guilty.  Consequently, the written decision informs Lewis that the DHO accepted the account of the incident by the charging officers over plaintiff's rendition of the events as to the other lesser charges.  (Compl., ¶ 110).

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record."

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

Here, DHO Osvart noted that there was adequate evidence to support some of the officers' charges against plaintiff, but not the more serious charges of assault.  It would appear from plaintiff's own allegations that DHO Osvart considered and relied upon the video tape of the incident and the history between plaintiff and the accusing officers based on an earlier incident in March 2005.  Moreover, it is clear that DHO Osvart relied upon the accounts of the incident as provided by both the charging officers and Lewis, and therefore, the decision was based on the

DHO's finding that the officers were more credible with respect
to the lesser charges.   Consequently, there was sufficient
evidence to support the disciplinary finding by Osvart, and no
due process violation as alleged by plaintiff.

Finally, to the extent Lewis may be asserting that his
confinement in disciplinary detention violated due process, such
claim also is subject to dismissal.   Procedural due process
rights are triggered by a deprivation of a legally cognizable
liberty interest.[5]   For a prisoner like Lewis, such a deprivation
occurs when the prison "imposes atypical and significant hardship
on the inmate in relation to the ordinary incidents of prison
life."   Sandin v. Conner, 515 U.S. 472, 484 (1995).   Lesser
restraints on an inmate's freedom are deemed to fall "within the
expected parameters of the sentence imposed by a court of law."
Id.   Thus, "[a]s long as the conditions or degree of confinement
to which the prisoner is subjected is within the sentence imposed
upon him and is not otherwise violative of the Constitution, the
Due Process Clause does not in itself subject an inmate's
treatment by prison authorities to judicial oversight."   Montanye
v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S.
at 480.   See also Asquith, 186 F.3d at 410-11 (no liberty
interest under the Due Process Clause in remaining in halfway

---

[5] The Due Process Clause of the Fourteenth Amendment
provides that no State may "deprive any person of life, liberty,
or property, without due process of law."

house).  Here, Lewis states that he was in disciplinary detention
for 12 days, and in a "dry cell" for a short time before his
disciplinary proceeding took place.[6]  The conditions of the dry
cell, as alleged by Lewis, appear to be the only "serious
deprivation or hardship" asserted.  He does not allege that he
was confined in the dry cell for any length of time.  Thus, this
very short period of disciplinary detention, even if due to
alleged false disciplinary actions, does not trigger the
protections of the Due Process Clause.  See Sandin, 515 U.S. at
484-486; see also Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d
Cir. 1997)(disciplinary segregation of state prisoner for 15
months did not impose atypical and significant hardship on
prisoner, and thus, did not implicate the due process clause).

Consequently, where the Complaint fails to allege a claim of
constitutional magnitude or atypical or significant hardship with
respect to Lewis' short period of detention, this claim asserting
denial of disciplinary due process will be dismissed without
prejudice, as against all defendants accordingly, for failure to

---

[6]  The Complaint is not specific as to the exact amount of
time plaintiff was in the dry cell, but from the allegations, it
would appear that Lewis is alleging that he was placed in the dry
cell for the day or some similar short period of time immediately
preceding his disciplinary hearing.

state a cognizable claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

D. <u>False Disciplinary Charges</u>

Lewis also claims that the correctional officer defendants conspired to fabricate false disciplinary charges against him. This Court finds no cognizable claim under § 1983.

The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. <u>See</u> <u>Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), <u>cert</u>. <u>denied</u>, 485 U.S. 982 (1988); <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional

_____

[7] Lewis also alleges that defendants Cathel and Trent violated his right to due process by refusing to reverse the disciplinary findings by DHO Osvart. Lewis does not articulate any due process violations purportedly committed by these defendants, other than the fact that the defendants did not reverse the DHO's findings. Thus, it would appear that Lewis is attempting to reverse the August 2005 disciplinary finding and restore good conduct time accordingly. Such a claim is barred by <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), because the relief sought presumes plaintiff's immediate or speedier release from prison and therefore, is not cognizable under § 1983, but instead, should be raised in a habeas proceeding.

violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL
306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109,
1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the
alleged knowing falsity of the charge [does not state] a claim of
deprivation of a constitutionally protected liberty interest ...
where procedural due process protections were provided").  In
this case, as discussed in the preceding section, Lewis was
provided a hearing and the pertinent evidence, a video tape of
the incident was reviewed by the DHO, giving Lewis an opportunity
to rebut the charges.  Furthermore, based on the video tape
evidence, the assault charges were dismissed.  Accordingly, Lewis
has failed to state a cognizable claim under § 1983 with respect
to the alleged false disciplinary charges.

## V.  CONCLUSION

Therefore, for the reasons set forth above, plaintiff's
claims alleging excessive force and failure to protect, in
violation of the Eighth Amendment will be allowed to proceed at
this time against all defendants, except defendants DHO Osvart
and Assistant Administrator Trent.  Further, because the common
law tort claim of assault and battery is related to the excessive
force claim, the Court will exercise supplemental jurisdiction
over this claim pursuant to 28 U.S.C. § 1367(a).  However,
plaintiff's claims against R. Cathel, P. Trent, and J. Osvart,
alleging denial of procedural due process and disciplinary due

process in general, will be dismissed at this time for failure to state a claim.  To the extent plaintiff is seeking a reversal or expungement of the disciplinary finding and restoration of good time credits, such claim will be dismissed without prejudice, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff's claim of false disciplinary charges against the correctional officer defendants also will be dismissed for failure to state a claim. An appropriate order follows.


/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: August 14, 2007