UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANDRE LEWIS | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-3663 (JAP) |
| v. | : | **OPINION** |
| LAZARUS VITON, et al., | : | |
| Defendants. | : | |

PISANO, District Judge

  Plaintiff Andre Lewis ("Plaintiff" or "Lewis"), presently incarcerated at Northern State Prison, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that he was assaulted by several correctional officers while incarcerated at New Jersey State Prison ("NJSP"). Defendants in this matter are Lazaro Viton, Giuseppe Mandora, Gregory Carbonaro, James Liik, Sr., Philip Lampitt, James D'Amore, and Anthony Degner, all correctional officers at NJSP; Sgt. Steve Alaimo, head of the Administrative Segregation Unit at NJSP at the time of the events in the Complaint; Ronald Cathel, Administrator at NJSP at the time, and Devon Brown, Commissioner of the New Jersey Department of Corrections (collectively, "Defendants"). Presently before the Court is a motion by Defendants to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of

Civil Procedure 56. For the reasons set forth below, Defendants' motion is denied.[1]

**I. Background**

According to the Complaint, on the morning of August 7, 2005, defendant correctional officers and Sgt. Alaimo, verbally harassed, threatened to kill, and brutally assaulted Plaintiff while he was being transported to the prison medical unit for his daily insulin shot. Plaintiff states that he had been handcuffed behind his back and had done nothing and said nothing to provoke the assault by Defendants. Lewis alleges that the officers kicked, punched, choked, strangled, and hit him repeatedly after he was slammed to the hard concrete floor. He also alleges that defendants repeatedly slammed his head into the concrete floor while Plaintiff was defenseless, handcuffed, and pinned to the ground. Lewis alleges that defendants Viton, Mandara, Degner and Alaimo verbally threatened plaintiff's life and safety and used racial slurs repeatedly. In particular, Lewis alleges that these defendants threatened to "kill" him in retaliation for Plaintiff's complaint against them in connection with an earlier assault that occurred in March 2005.[2] Defendants acknowledge that, as a result of this incident, Lewis sustained injuries that required treatment at a hospital outside the prison.

With respect to the alleged threats made against Plaintiff, Lewis claims that he repeatedly notified Defendant Cathel of these threats. Lewis also alleges that he and his family have

---

[1]Plaintiff has filed a motion to stay this matter – in particular Defendants' motion – until certain of his discovery requests are complied with, and to compel discovery. In light of the Court's decision on Defendants' motion, Plaintiff's motion to stay shall be denied. That part of Plaintiff's motion seeking to compel discovery shall be referred to the Magistrate Judge for further disposition.

[2]The March 2005 incident is the subject of another civil action currently pending in this district court, *Lewis v. Williams, et al.*, Civil No. 07-1592 (GEB).

repeatedly contacted Brown to complain about the assaults inflicted upon plaintiff in March and August 2005.  Lewis alleges that neither Cathel nor Brown did anything to stop these abuses or to protect plaintiff from harm committed by defendant correctional officers who allegedly had a history of violence and abuse.

Defendants dispute Plaintiff's allegations.  According to Defendants, while Plaintiff was being escorted to the clinic, Plaintiff made an aggressive move toward one of the officers and, as a result, the other officers were required to restrain Plaintiff.  Declaration of Thomas Kemble ("Kemble Decl.") at Ex. B (Special Investigations Division report).  As Plaintiff continued to resist, more officers were required to assist in bringing Plaintiff to the ground in order to control him.  *Id.*  According to Defendants, several officers responding to the incident received treatment for minor injuries at Robert Wood Johnson Hospital, and Plaintiff was transported to Saint Francis Medical Center for treatment of lacerations and contusions.

On August 19, 2005, Plaintiff appeared before a disciplinary hearing officer for adjudication of the following charges stemming from the incident: (1) threat with bodily harm; (2) throwing bodily fluids; (3) conduct which disrupts; and (4) three counts of assault.  The hearing officer found Plaintiff guilty of the first three charges.  Plaintiff was found not guilty of the three assault counts.

On August 6, 2007, Plaintiff filed the instant Complaint asserting claims of excessive force in violation of the Eighth Amendment and common law tort claims of assault and battery against defendants Viton, Mandara, Degner, Liik, D'Amore, Lampitt, Alaimo and Carbonaro. Lewis also asserts an Eighth Amendment failure to protect claim with respect to defendants

3

Cathel and Brown.³  All defendants are sued in their individual capacities only.

**II.  Analysis**

A.  Standard on a Motion to Dismiss under Rule 12(b)(6)

The Supreme Court clarified the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." *Twombly*, 127 S.Ct. at 1965 (internal citations and footnote omitted).

B.  Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

---

³The Complaint also asserted certain claims against various defendants in connection with disciplinary charges that were brought against Plaintiff as the result of the incident.  These claims were dismissed by this Court's earlier Opinion and Order filed August 14, 2007.

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

C.  Claims Against Cathel and Brown

Defendants argue that Plaintiff's claims against Cathel and Brown (the "Administrative

5

Defendants") should be dismissed because these Defendants were not personally involved in any alleged violation of Plaintiff's civil rights, and they cannot be held liable for a § 1983 violation under a theory of *respondeat superior*. Indeed, in § 1983 actions, "[s]upervisory liability cannot be based solely upon the doctrine of respondeat superior." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). Defendants assert that Plaintiff's claims against Brown and Cathel are based on solely upon their holding positions as administrators with the New Jersey Department of Corrections. Def. Br. at 15. According to Defendants, Plaintiff cannot produce any substantial credible evidence to establish that he was the victim of excessive force and that Defendants Cathel and Brown were deliberately indifferent to his safety needs.[4] *Id.*

Plaintiff, however, responds that his claims are not based upon a theory of *respondeat superior*. He alleges that Defendant Cathel was "repeatedly notified of the threats against the plaintiff since his first handcuffed beating and did nothing to protect the plaintiff." Compl. ¶ 111. Plaintiff alleges that Defendant Brown was likewise notified by both Plaintiff and his family. Compl. ¶113. As such, Plaintiff asserts that these Defendants are liable under § 1983 because they did nothing to "curb the abuses" or "effectively protect" plaintiff from harm. *Id.*

To establish supervisory liability, the misconduct of the subordinates (in this case, the corrections officers) must be "affirmatively link[ed]" to the actions or inactions of the

---

[4]In their reply brief, Defendants point to Plaintiff's other suit pending in this district, *Lewis v. Williams*, Civil No. 07-1592 (GEB), and note that in that case the claims against Cathel were dismissed on Eleventh Amendment grounds because Cathel was "not personally involved in the conduct complained of" and he was sued in his official capacity. Defendants argue that Cathel and Brown should "similarly be dismissed" in this case. Defendants, however, overlook that Plaintiff has expressly sued Defendants in their individual capacity. As such, Defendants' argument fails.

6

supervisors (in this case, Cathel and Brown). *Heggenmiller v. Edna Mahan Correctional Institution for Women*, 128 Fed. Appx. 240, 245, 2005 WL 826070, 3 (3d Cir. 2005) (citing *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). In the context of a failure-to-protect claim, an inmate must show that he was faced with "a substantial risk of harm," *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and that prison officials knew of and deliberately disregarded the excessive risk to inmate safety, *id.* at 837. The predicate substantial risk of harm must be objectively serious. *Id.* "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 834.

      The question in the instant case is whether the Administrative Defendants were on notice that Plaintiff allegedly faced a substantial risk of being assaulted by corrections officers and deliberately disregarded that risk. In support of his assertion that Defendants did have the requisite knowledge, Plaintiff first points to numerous grievance forms submitted by him, *see* Pl. Exs. 64-91. When viewed in the light most favorable to Plaintiff as the non-movant, a few of these grievances can be construed as providing some notice prior to the incident at issue in this case that Plaintiff was allegedly being threatened and/or assaulted by corrections officers. *See, e.g.*, Pl. Ex. 67 (requesting a meeting with Cathel regarding "repeated incidents" of "assault, terroristic threats [and] harassment" by NJSP personnel); Pl. Ex. 71 (complaining that personnel

under supervision of Defendant Alaimo, *inter alia*, assaulted and threatened Plaintiff). Plaintiff has also provided the Court with copies of letters he allegedly sent directly to Cathel and Brown. *See* Pl. Ex. 60 ("I ask that you personally counsel and instruct Officer P. Williams [not a defendant in this case], Sergeant S. Alaimo, and their 'crew' to stop harassing me, stop threatening me; and stop encouraging others of their cohorts to support their cohesive schemes to attack, vilify, demonize, and mount heaps of false charges against me."); Pl Ex. 62 (complaining, *inter alia*, of daily verbal abuse and threats by "custodial personnel"). Lastly, Plaintiff also submitted a certification from his mother, who certifies that "between March 2005 and August 2005, [she] informed the Administrator of the New Jersey State Prison and the Commissioner of New Jersey Dep[artment] of Correction[s] of the mental and physical abuse [Plaintiff] was being subject to by the Dep[artment] of Corrections custodial staff." Pl. Ex. 63. She further certified that she "pleaded with them to investigate this matter immediately and to transfer [Plaintiff] to a safe facility." *Id.*

As an initial matter, the Court finds that, contrary to Defendants' argument, Plaintiff's claims against Cathel and Brown are not predicated on a theory of *respondeat superior*, but rather, on a theory of supervisory liability. As such, viewing the evidence submitted by Plaintiff in the light most favorable to him,[5] the Court finds that the evidence raises material fact issues which preclude summary judgment at this time. The evidence, which is unrebutted by Defendants, raises a genuine issue of material fact as to whether Cathel and Brown knew of and recklessly disregarded a potential risk to Plaintiff. Indeed, the Court of Appeals for the Third

---

[5]Absent evidence to the contrary, the Court must presume, for example, that Cathel and Brown received the letters and grievances submitted by Plaintiff.

Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence." *Young v. Quinlan*, 960 F.2d 351, 363 n.23 (3d Cir. 1992). Significantly, there remains a question of whether the Administrative Defendants had knowledge of the alleged assaults and threats to Plaintiff. Consequently, Plaintiff's motion as to Cathel and Brown shall be denied.

D.  Persons Amenable to Suit Under § 1983

Defendants argue that, to the extent that they are being sued in their official capacity, they are not "persons" amenable to suit under § 1983 and, therefore, such claims should be dismissed. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (an official of the State acting in his or her official capacity is not a person within the meaning of 42 U.S.C. § 1983). However, the Complaint expressly states that Plaintiff is suing each Defendant in his individual capacity. A plaintiff may bring suit against officials in their individual capacity, and an officer may be held liable for actions taken while performing official functions. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Because Plaintiff is suing the Defendants only as individuals, Defendants' motion with respect to this issue is denied.

E.  Qualified Immunity

Defendants also argue that they are "entitled to qualified immunity because they acted reasonably when confronted with the hostile behavior of the Plaintiff and they cannot be held liable for excessive force or for failing to protect him." Def. Br. at 17. "Qualified immunity shields government officials from liability from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329, 2008 U.S. App. WL 449732, at *2 (3d Cir. Feb.

20, 2008), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Assessing whether an official is entitled to qualified immunity involves a two-step analysis.  The threshold determination is "whether a constitutional right would have been violated on the facts alleged...."  *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir.2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  If a court determines the answer to that inquiry is yes, then it must then determine "whether the right was clearly established."  *McKee v. Hart*, 436 F.3d 165, 169 (3d Cir.2006) (quoting *Groody*, 361 F.3d at 238).  If both of these elements are met then the defendant is entitled to qualified immunity.  *Id.*

  Defendants argue that there is "no evidence" to support Plaintiff's claim that he was assaulted by the defendant corrections officers as he was being escorted to the medical unit for his daily insulin shot.  Rather, Defendants assert that Plaintiff "instigated the altercation by threatening to kill CO Anthony Degner, resisted orders, became combative with officer by kicking SCOs Viton and Mandara, continued to be combative and resisted the attempts by officers to subdue him."  Def. Br. at 19.  Defendants argue that the officers used "no more force than was necessary to subdue Plaintiff."  *Id.*  Defendants also point to medical records showing that Plaintiff suffered "only minor injuries," *i.e.*, a facial laceration and contusion, arguing that such injuries are inconsistent with Plaintiff's claims that he was assaulted in an excessively violent manner.  Def. Br. at 20, Kemble Decl., Ex. B at 20-25.  However, Plaintiff's verified Complaint alleges that correctional officers, without justification and while Plaintiff was handcuffed from behind, repeatedly punched, kicked and shoved Plaintiff into a wall.  Plaintiff alleges that he was held for an extended time in a strangulation hold, choking off his airway.  Plaintiff also alleges that one officer grabbed Plaintiff's hair and repeatedly smashed Plaintiff's

10

head onto the concrete floor. Plaintiff has provided medical records from the clinic as well as a NJSP Special Report prepared by Sgt. S. Davis which, contrary to assertions made by Defendants that Plaintiff suffered only a minor cut and bruises, raises an issue as to whether that Plaintiff may have at some point lost consciousness as he alleges. *See* Pl. Ex. A17 (Plaintiff was "acting unresponsive . . . [inmate] stirred and opened his eyes when amonia inhalent [sic] was placed under his nose"); Pl. Ex. A18 ("inmate appeared to be slightly unresponsive. Nurse Laskso asked that the inmate be held upright in the chair so she could check the injuries to his face."). Also, there is no dispute that Plaintiff was injured seriously enough to be transported to the emergency room of St. Francis Medical Center by ambulance after examination by the prison medical staff.

Clearly, the parties' accounts of the incident differ significantly. Having reviewed all of the evidence in the light most favorable to the non-movant, the Court finds that there remains a genuine issues of material fact as to whether the actions of the Defendants were reasonable in light of Plaintiff's allegedly combative and hostile behavior and, therefore, whether Defendants are entitled to qualified immunity. In particular, issues of fact exist as to the amount of force used against Plaintiff and whether and to what extent force was required under the circumstances. As such, Defendants' motion with respect to the issue of qualified immunity is denied.

F.  Common Law Assault and Battery

Defendants argue that the common law assault and battery claim must be dismissed because there is "no evidence to support the Plaintiff's version of events." Pl. Br. at 29. Under New Jersey law, "[a]ny non-consensual touching is a battery," and such a cause of action is established by "proof of an unauthorized invasion of the plaintiff's person, even if harmless." *Perna v. Pirozzi*, 92 N.J. 446, 460-61, 457 A.2d 431 (1983). As previously discussed, however,

11

genuine issues of material fact exist with regard to the events of August 7, 2005. Genuine material fact issues exist as to whether Plaintiff was subject to an "unauthorized invasion" of his person. Therefore, Defendants' motion for summary judgment on this issue is denied.

G.  New Jersey Tort Claims Act

Defendants argue that "to the extent that Plaintiff's Complaint can be construed to make a claim under the Tort Claims Act for pain and suffering, that claim is barred." Pl. Br. at 29. The Torts Claims Act, adopted by the New Jersey legislature in 1972, was intended "to reestablish the immunity of public entities while coherently ameliorating the harsh results of the [sovereign immunity] doctrine." *Gilhooley v. County of Union*, 164 N.J. 533, 538 (2000). "The guiding principle of the Tort Claims Act is that 'immunity from tort liability is the general rule and liability is the exception'" *Coyne v. N.J. Dep't of Transp.*, 182 N.J. 481, 488 (2005) (quoting *Garrison v. Twp. of Middletown*, 154 N.J. 282, 286 (1998)). Furthermore, when liability exists, the Tort Claims Act sets forth limitations on a plaintiff's recovery. *Gilhooley*, 164 N.J. at 538.

One such limitation embodied in the Tort Claims Act is in connection with pain and suffering damages. *Id.* N.J.S.A. § 59:9-2(d) provides, in part, that:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of bodily function, permanent disfigurement or dismemberment where the medical expenses are in excess of $3,600.00.

N.J.S.A. §59:9-2(d). Referring to this limitation, Defendants argue that the Plaintiff cannot provide any "objective medical evidence that he has sustained a permanent loss of bodily function, permanent dismemberment or permanent disfigurement, where medical expenses are in excess of $3,600.00." Def. Br. at 30. As such, Defendants maintain that Plaintiff's claim for

12

pain and suffering damages is barred by the Tort Claims Act.

The Court finds Defendants' argument unavailing. N.J.S.A. § 59:3-14 provides that:

a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

b. Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

N.J.S.A. § 59:3-14. As discussed earlier, there are genuine issues of material fact regarding the Defendants' conduct and, therefore, there exists a genuine issue of material fact as to whether the limitation of N.J.S.A. § 59:9-2(d) is applicable in this case. Consequently, the Court will deny the Defendants' motion for summary judgment on this issue.

H. Punitive Damages

Defendant's argue that Lewis' "federal and state claims for punitive damages must be dismissed because he cannot make the requisite showing to warrant such relief." Def. Br. at 31. First, Defendants contend that Plaintiff's federal claim must fail since the record is "devoid of any facts or evidence to support the Plaintiff's claim that the Defendants assaulted him." Def. Br. at 32. However, as discussed earlier, there are genuine issues of material fact as to the amount of force that was used against Plaintiff and the degree of force that was required under the circumstances alleged. The Court, therefore, does not find Defendants are entitled to summary judgment on Plaintiff's claim for punitive damages under federal law.

As to Plaintiff's claim for punitive damages under state law, Defendants argue that New Jersey's Tort Claims Act bars recovery of punitive damages. *See* N.J.S.A.§ 59:9-2(c) ("No

13

punitive or exemplary damages shall be awarded against a public entity.") The Court finds this argument unpersuasive as well. While the statute provides that punitive damages may not be awarded against public entities, no such immunity exists for public employees. *See, e.g., Marion v. Borough of Manasquan*, 231 N.J. Super. 320, 333 (App. Div. 1989); *see also Manz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002). Furthermore, since genuine issues of material fact exist with regards to Defendants' actions on August 7, 2005, the Court must deny the Defendants' motion for summary judgment on this issue as well.

I.  Extent of Plaintiff's Injuries

Defendants argue that they are "entitled to summary judgment because the plaintiff['s] injuries were de minimis" and therefore not actionable under an Eighth Amendment excessive force analysis. (Def. Br. at 33.) Specifically, Defendants contend that their actions "were not 'objectively harmful enough' to offend 'contemporary standards of decency.'" Def. Br. at 35.

In addressing Defendants' argument, the Court is guided by the Supreme Court's decision in *Hudson v. McMillian*, 503 U.S. 1 (1992). As explained in *Hudson*,

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

*Id.* at 9 (citations omitted). While it is true that "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force," it does not exclude uses of force which are "'repugnant to the conscience of mankind.'" *Id.* at 9-10 (emphasis omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

14

As noted in by the Third Circuit, "*Hudson* primarily stands for the proposition that a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." *Brooks v. Kyler*, 204 F.3d 102, 107 (3rd Cir. 2000) (quoting *Hudson*, 503 U.S. 1, 8 (1992)). In other words, "the absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force against a prisoner." *Id.* at 108. While "the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used." *Id.*

As previously discussed, after a review of the evidence in the light most favorable to Plaintiff as the non-movant, the Court finds that issues of material fact remain as to the extent of force used against the Plaintiff and the extent of Plaintiff's injuries. Accordingly, the Court must deny the Defendants' motion for summary judgment on this issue.

### III.  Conclusion

For the reasons above, the Court denies Defendants' motion to dismiss and for summary judgment. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: July 31, 2008